IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TAYLOR KALIN,

    Plaintiff,

v.

APPLE INC.,

    Defendant.

   /

No. C 13-04727 WHA

**NOTICE REGARDING FACTORS TO BE EVALUATED FOR ANY PROPOSED CLASS SETTLEMENT**

    For the guidance of counsel, please keep in mind the following factors that will typically be considered in determining whether to grant preliminary approval to a class settlement:

    **1.    ADEQUACY OF REPRESENTATION.**

    Is the plaintiff an adequate representative with standing? Is plaintiff motivated to and qualified to act on behalf of those he or she seeks to represent? Are there shortcomings in the plaintiff that would be advanced to defeat a class certification motion? What is the litigation history, criminal history, and relationship to plaintiff's counsel? In an employment case, how long did the plaintiff work for the employer? The opinion of the lead plaintiff as to the fairness of the settlement to absent class members must be provided to the Court, along with an opinion by counsel. Adequacy of counsel is not a substitute for adequacy of the representative.

    If a settlement proposal is made prior to formal class certification, there is a risk that the class claims have been discounted, at least in part, by the risk that class certification will be denied. All counsel should explain whether this risk was discussed and/or considered in the negotiations and, if so, why the rights of non-parties should be prejudiced merely because the

particular "representative" (or his or her counsel) might be deemed inadequate or other requirements of Rule 23 might be unsatisfied.

### 2. DUE DILIGENCE.

Has class counsel performed due diligence (discovery and investigation) to learn the strength and best-case dollar amount of the class claim, including preparation of a final expert class damage report? Please remember that when one undertakes to act as a fiduciary on behalf of others (here, the proposed class), one must always perform adequate due diligence before acting.

### 3. COST-BENEFIT FOR ABSENT CLASS MEMBERS.

In the proposed settlement, what will absent class members give up versus what will they receive in exchange, *i.e.*, a cost-benefit analysis? If the recovery will be a full recovery, then much less will be required to justify the settlement than for a partial recovery, in which case the discount will have to be justified. This will require an analysis of the specific proof, such as a synopsis of any conflicting evidence on key fact points. It will also require a final class-wide damage study or a very good substitute, in sworn form. If little discovery has been done to see how strong the claim is, it will be hard to justify a discount on the mere generalized theory of "risks of litigation." A coupon settlement will rarely be approved. Where there are various subgroups within the class, what will be the plan of allocation of the settlement fund and why?

### 4. THE RELEASE.

The release should be limited only to the claims certified for class treatment. Language releasing claims that "could have been brought" is too vague. The specific statutory or common law claims to be released should be spelled out. Class counsel must justify the release as to each claim released, the probability of winning, and its estimated value if fully successful. Does the settlement contemplate that claims of absent class members will be released even for those whose class notice is returned as undeliverable? Usually, the Court will *not* extinguish claims of individuals known to have received no notice or whom received no benefit (and/or for whom there is no way to send them a settlement check). Put differently, usually the release must extend only to those who receive money for the release.

### 5. EXPANSION OF THE CLASS.

Typically, defendants vigorously oppose class certification and/or argue for a narrow class. In settling, however, defendants often seek to expand the class, either geographically (*i.e.*, nationwide) or claim-wise (including claims not in the complaint) or person-wise (*e.g.*, multiple new categories). Such expansions will be viewed with suspicion. If an expansion is to occur it must come with an adequate plaintiff and one with standing to represent the add-on scope and with an amended complaint, not to mention due diligence as to the expanded scope. The settlement dollars must be sufficient to cover the old scope plus the new scope. Personal and subject-matter jurisdiction over the new individuals to be compromised by the class judgment must be shown.

### 6. REVERSIONS.

A settlement that allows for a reversion of settlement funds to the defendant(s) is a red flag, for it runs the risk of an illusory settlement, especially when combined with a requirement to submit claims that may lead to a shortfall in claim submissions.

### 7. CLAIM PROCEDURE.

A settlement that imposes a claim procedure rather than cutting checks to class members for the appropriate amount may impose too much of a burden on class members, especially if the claim procedure is onerous, or the period for submitting is too short, or there is a likelihood of class members treating the notice envelope as junk mail. The best approach is to calculate settlement checks from defendant's records (plus due diligence performed by counsel) and to send the checks to the class members along with a notice that cashing the checks will be deemed acceptance of the release and all other terms of the settlement.

### 8. ATTORNEY'S FEES.

To avoid collusive settlements, the Court prefers that all settlements avoid any agreement as to attorney's fees and leave that to the judge. If the defense insists on an overall cap, then the Court will decide how much will go to the class and how much will go to counsel, just as in common fund cases. Please avoid agreement on any division, tentative or otherwise.

3

A settlement whereby the attorney seems likely to obtain funds out of proportion to the benefit conferred on the class must be justified.

### 9. DWINDLING OR MINIMAL ASSETS?

If the defendant is broke or nearly so with no prospect of future rehabilitation, a steeper discount may be warranted. This must be proven. Counsel should normally verify a claim of poverty via a sworn record, thoroughly vetted.

### 10. TIMING OF PROPOSED SETTLEMENT.

In order to have a better record to evaluate the foregoing considerations, it is better to develop and to present a proposed compromise *after* class certification, after diligent discovery on the merits, and after the damage study has been finalized. On the other hand, there will be some cases in which it will be acceptable to conserve resources and to propose a resolution sooner. For example, if the proposal will provide full recovery (or very close to full recovery) then there is little need for due diligence. The poorer the settlement, the more justification will be needed and that usually translates to *more* discovery and due diligence; otherwise, it is best to let non-parties fend for themselves rather than foist a poor settlement on them. Particularly when counsel proposes to compromise the potential claims of others in a low-percentage recovery, the Court will insist on detailed explanation of why the case has turned so weak, an explanation that usually must flow from discovery and due diligence, not merely generalized "risks of litigation." Counsel should remember that merely filing a putative class complaint does not authorize them to compromise the rights of absent parties. *If counsel believe settlement discussions should precede a class certification, a motion for appointment of interim class counsel must first be made.*

### 11. A RIGHT TO OPT OUT IS NOT A CURE-ALL.

A borderline settlement cannot be justified merely because class members may opt out if they wish. The Court has an independent duty to assess whether it is reasonable and adequate. Once the named parties reach a settlement in a purported class action, they are always solidly in favor of their own proposal. There is no advocate to critique the proposal on behalf of absent

4

class members. That is one reason that Rule 23(e) insists that the district court vet all class settlements.

### 12.  INCENTIVE PAYMENTS.

If the proposed settlement by itself is not good enough for the named plaintiff, why should it be good enough for absent class members similarly situated? Class litigation proceeded well for many decades before the advent of requests for "incentive payments," which too often are simply ways to make a collusive or poor settlement palatable to the named plaintiff. A request for an incentive payment is a red flag.

### 13.  NOTICE TO CLASS MEMBERS.

Is the notice in plain English, plain Spanish, and/or plain Chinese (or the appropriate language)? Does it plainly lay out the salient points, which are mainly the foregoing points in this memorandum? Will the method of notice distribution really reach every class member? Will it likely be opened or tossed as junk mail? How can the envelope design enhance the chance of opening? Can notice be supplemented by e-mail notice?

*       *       *

Counsel should be mindful of the factors identified in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Finally, for an order denying proposed preliminary approval, *see Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007).

**IT IS SO ORDERED.**

Dated: January 6, 2014.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE