**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMANDA FRLEKIN, *et al.*

    Plaintiffs,

v.

APPLE, INC.,

    Defendant.

/

ADAM KILKER, *et al.*

    Plaintiffs,

v.

APPLE, INC.,

    Defendant.

/

TAYLOR KALIN,

    Plaintiff,

v.

APPLE, INC.,

    Defendant.

/

No. C 13-03451 WHA
No. C 13-03775 WHA
No. C 13-04727 WHA

**ORDER DENYING
SUMMARY JUDGMENT**

**INTRODUCTION**

In two related FLSA wage-and-hour actions, defendant moves for summary judgment against all individually-named plaintiffs on all claims. For the reasons stated below, the motions are **DENIED**.

**STATEMENT**

Plaintiffs Amanda Frlekin, Dean Pelle, Adam Kilker, and Brandon Fisher bring this action on behalf of current and former hourly-paid and non-exempt specialists, managers, and "genius bar" employees of defendant Apple, Inc. As one of the world's largest global technology companies, Apple operated approximately 250 retail stores in 44 states in 2012. Apple employs approximately 307,250 people, 26,000 of whom work in Apple's retail segment.

Most hourly employees work eight hours per day and 40 hours per week. Apple requires its hourly employees to clock-in when they arrive to work, clock in-and-out during meal breaks, and clock-out when they leave for the day. To clock in-and-out, employees must enter a username and password into time-tracking software that is allegedly used at all of Apple's retail stores. Plaintiffs claim that Apple requires its hourly employees to wait in line and undergo multiple off-the-clock security bag searches and clearance checks when they leave for their meal breaks and after they have clocked-out at the end of their shifts. Apple's written policy states:

> **General Overview:**
>
> All employees . . . are subject to personal package and bag searches. Personal technology must be verified against your Personal Technology Card . . . during all bag searches.
>
> Failure to comply with this policy may lead to disciplinary action, up to and including termination.
>
> **Do:**
>
> Find a manager or member of the security team (where applicable) to search your bags and packages before leaving the store.
>
> **Do Not:**
>
> Do not leave the store prior to having your personal package or back [sic] searched by a member of management or the security team (where applicable).
>
> Do not have personal packages shipped to the store. In the event that a personal package is in the store, for whatever reason, a member of

2

>management or security (where applicable) must search that package
>prior to it leaving the premises.

Employees' "Personal Technology Cards" list the serial numbers of employees' personal Apple devices. Apple does not inspect an employee's personal device if it is not Apple-branded technology. Hourly employees allegedly end their shifts or take breaks at the same time, allegedly resulting in lengthy lines to undergo security screenings. Customers are not subject to the same security screenings. Plaintiffs claim that these uncompensated security screenings can last between 10–15 minutes each time, including time spent waiting in line. Accordingly, plaintiffs allege violations of the Fair Labor Standards Act, along with violations of various California, Massachusetts, New York, and Ohio state labor and unfair competition laws (First Amd. Compl. ¶¶ 10–139; Shalov Decl., Exh. J, Dkt. No. 67).

A month after Frlekin and Pelle filed their action, Kilker and Fisher filed a separate action alleging identical claims. A joint stipulation to consolidate the *Frlekin* and *Kilker* actions was granted. Soon afterwards, plaintiff Taylor Kalin filed a separate action alleging the same claims as the *Frlekin* action, and the *Kalin* action was related. The *Kalin* action, however, is not currently consolidated with the *Frlekin* action. Apple moves for summary judgment against all individually-named plaintiffs on all claims. This order follows full briefing and oral argument.

## ANALYSIS

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the nonmoving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). With regards to the FLSA, "[w]hether an activity is excluded from hours worked under the FLSA, as amended by

3

the Portal-to-Portal Act, is a mixed question of law and fact. The nature of the employees' duties is a question of fact, and the application of the FLSA to those duties is a question of law." *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 910 (9th Cir. 2004).

### 1. WHETHER UNDERGOING A SECURITY SCREENING IS WORK.

Under the FLSA, a covered employee must be paid for all "hours worked." 29 U.S.C. 206, 207. In 1947, Congress amended the FLSA by passing the Portal-to-Portal Act, 29 U.S.C. 251–62, which carved out two exemptions, both relating to activities which the employee performs prior to commencing or subsequent to ceasing his principal activities. 29 U.S.C. 254(a). The first is for time spent traveling to and from the place where he performs his principal activities. The second is for activities which are "preliminary to" or "postliminary to" those activities. *Ibid.* As a result, work that is preliminary or postliminary to a principal activity is generally not compensable unless it is "an integral and indispensable part of the principal activities for which [he or she is] employed." *Rutti v. Lojack Corp. Inc.*, 596 F.3d 1046, 1055 (9th Cir. 2010) (citations omitted).

To simplify the analysis, our court of appeals adopted a three-step approach to determine whether an activity was compensable within the definitions of the FLSA and the Portal-to-Portal Act. The three steps are: (1) whether the activity constituted "work," (2) whether the activity was an "integral and indispensable" duty, and (3) whether the activity was *de minimis*. *Bamonte v. City of Mesa*, 598 F.3d 1217, 1224 (9th Cir. 2010). "Work" is defined as "physical or mental exertion . . . controlled or required by the employer *and* pursued necessarily and primarily for the benefit of the employer." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003) (emphasis added). *Both* the "control or requirement" prong *and* the "necessity and benefit" prong must be met to make a colorable claim under the FLSA. *Bamonte*, 598 F.3d at 1225.

A threshold issue in this action is whether an Apple employee is "working" when undergoing a security screening because he or she is required to do so by Apple. Although generally more protective of employee's interests than the FLSA, California state labor laws also look to employer control to determine whether an activity is compensable. *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578–85 (2000). The parties agree that the state labor laws of New

4

York, Massachusetts, and Ohio generally mirror the FLSA (Dkt. No. 156, Br. at 20–22; Opp. at 10 n.70) (collecting cases).

### A. Genuine Issues of Material Fact.

At the initial case management conference, the presentation led the assigned judge to expect the issues could possibly be resolved on summary judgment and therefore save litigation expense for the parties. *Wright v. Schock*, 742 F.2d 541, 542–44 (9th Cir. 1984) (district courts have discretion to rule on summary judgment before deciding class certification); *accord Khasin v. Hershey Co.*, 2014 WL 1779805, at *4 (N.D. Cal. May 5, 2014) (Judge Edward Davila). Summary judgment motions were invited and considered. The record in this action, however, involves many varying fact patterns and lends itself to a myriad of different interpretations of Apple's policy *and* practice regarding when an employee is required to undergo a security screening. Apple argues that only employees who have bags or Apple devices are required to undergo a security screening. The summary judgment record, however, does not specify how broadly or narrowly the policy is in practice. For example, it is unclear how Apple supervisors across the country interpret the word "bag." While Frlekin testified at her deposition that she did not have to undergo a security screening if she only brought a wallet to work, Kilker testified that he occasionally had to undergo a security screening for wearing a jacket with pockets (Frlekin Dep. 59:12–17; Kilker Dep. 87:9–24). There is also a genuine issue of material fact as to whether Apple employees must wait in line in order to determine whether they will be subject to a security screening or waved through. Kalin testified that all employees in the San Francisco store were subject to security screenings *even if* they did not have a bag or Apple device (Kalin Decl. ¶¶ 75–79):

> During [September 2010 to August 2012], when I was exiting, I observed that every employee (including me) who wanted to exit the store was required to wait in line and go through the SF Store Security Check, regardless of whether the employee had any personal Apple technology to security check, had any personal bag to check or had any Apple store products that he or she had purchased that had to be checked.
>
> \*   \*   \*
>
> During [September 2010 to August 2012], I was told by Apple management and trainers (Chris Lamb, Brian Altman and other

5

> management persons conducting the "daily downloads" for employees) on more than one occasion that even if I did not have any personal Apple technology to security check, did not have any personal bag to security check or any Apple store products that I had purchased that needed to be checked, I still was required wait in line to go through the SF Store Security Check and that I could not just skip the line and get myself waived through.
>
> In fact, during [September 2010 to August 2012], while I was waiting in the SF Store Security Check Line trying to exit, I observed new employees from time-to-time trying to skip the line and pass through the SF Store Security Check. When this happened, I observed them being sent back to the end of the line by the security guard.

Moreover, Kalin testified that bringing a bag or Apple device to work was for Apple's benefit because it actively encouraged employees to show their personal Apple devices to customers and that "it would be positive for [his] job performance perception to do this" (Kalin Decl. ¶¶ 94–103). Another issue concerns the extent to which employees are required to stand in line merely because they brought "necessities of life" into the workplace in a "bag."

### B. Novel Question of Law.

Apple argues that undergoing a security screening is not "work" because it does not *require* employees to undergo a security screening. Citing to *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994), and *Alcantar v. Hobart Service*, 2012 U.S. Dist. LEXIS 177608 (C.D. Cal. Dec. 13, 2012) (Judge Philip Gutierrez), Apple argues that employees may voluntarily *choose* to bring a bag or Apple device to work, and therefore they freely volunteer to undergo a security screening. In *Vega*, the defendant-employer provided transportation by bus from set meeting locations to the fields in which the plaintiffs worked. The employer, however, allowed the plaintiffs to choose whether to take the bus to the fields. *Vega*, 36 F.3d at 423–24. The Court of Appeals for the Fifth Circuit in *Vega* ruled that the travel time from the meeting location to the fields and back was not compensable under the FLSA in part because the "workers were not required to use [the defendant-employer's] buses to get to work in the morning [because] they chose where they lived and how they got to work." *Id*. at 425. This was true even though workers were *required* to work in a particular field if they chose to ride on the employer's bus and it would otherwise be very inconvenient for employees to take alternative transportation. *Id.* at 423, 425. Similarly,

6

the district court in *Alcantar* found that the plaintiff was not entitled to compensation under California labor laws when he chose to drive his employer's van instead of his own vehicle for work because he "was not required to subject himself to Defendants' control." *Alcantar*, 2012 U.S. Dist. LEXIS at *11, citing *Overton v. Walt Disney Co.*, 136 Cal. App. 4th 263, 265 (2006). In so holding, the district court rejected the plaintiff's "feasib[ility]" argument that he could not drive his own vehicle, regardless of formal policy, because of the expensive equipment in the vehicle for which he was responsible and the lack of available parking at the office; "the fact that an alternate means of transportation is not available or feasible does not make travel time compensable; rather, the inquiry turns on whether a plaintiff has the *option* of taking the employer-provided transportation." *Id*. at *9–10 (emphasis added).

The *Vega* and *Alcantar* decisions, while providing guidance, do not compel summary judgment in favor of Apple. The records in both of those actions established that the employees could decide not to volunteer to subject themselves to their employers' requirements.

Drawing all reasonable inferences in favor of plaintiffs here, the summary judgment record is at best ambiguous about whether the security screenings were mandatory for at least some locations and circumstances. Moreover, the "choices" made by the *Vega* and *Alcantar* employees were driven by personal convenience, not by the necessities of life. In *Vega*, the Court of Appeals for the Fifth Circuit relied on the fact that not "all of [the] field workers rode [the employer's] buses." That was in part because the employees "chose where they lived and how to get to and from work." *Vega*, 36 F.3d at 425. In other words, the employees in *Vega* had a free choice to drive to the fields to work. Similarly, the plaintiff in *Alcantar expressly admitted* that he had a free choice to leave his employer's van at work or drive the van home with him. *Alcantar*, 2012 U.S. Dist. LEXIS at *10–11. Here, Apple employees may need to bring a bag to work for reasons they cannot control, such as the need for medication, feminine hygiene products, or disability accommodations.

On the other hand, plaintiffs' authorities are also not on point because they all involve requirements placed on *all employees* by their employer or the nature of their work, rather than by the necessities of life. *See Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir.

7

2013); *Cervantez v. Celestica Corp.*, 618 F. Supp. 2d 1208 (C.D. Cal. 2009); *Maciel v. City of L.A.*, 569 F. Supp. 2d 1038 (C.D. Cal. 2008); *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000); *Jordan v. IBP, Inc.*, 542 F. Supp. 2d 790 (M.D. Tenn. 2008).

No decision is on point and, indeed, these actions seem to present a range of policies and practices at various stores, rather than a single crisp scenario. To be of more assistance to our court of appeals, it would be better to hold a trial (or at least produce a more comprehensive record) and then decide the fact issues.

2. **STAY.**

In *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525 (9th Cir. 2013), our court of appeals held that the time spent by hourly-paid employees in mandatory security screenings is compensable under the FLSA. *Id.* at 530–31. The Supreme Court, however, granted *certiorari* in *Busk* on March 3, 2014. As both parties agree that the state labor laws of New York, Massachusetts, and Ohio mirror the FLSA, the Supreme Court's ruling in *Busk* might control the outcome of all claims in both the *Frlekin* and *Kalin* actions except for the California state-law claims (Dkt. No. 156, Br. at 20–22; Opp. at 10 n.70) (collecting cases). It is anticipated that the Supreme Court will decide *Busk* in the spring of 2015.

A March 26 order denied plaintiffs' motion to stay the *Frlekin* action pending the Supreme Court's ruling in *Busk* without prejudice to reconsidering the motion after ruling on Apple's summary judgment motions. In its motion for summary judgment in the *Frlekin* action, Apple argues that the Supreme Court's review of *Busk* does not affect either the *Frlekin* or *Kalin* actions because "*Busk* did not involve an avoidable security procedure such as the one at issue here . . . ." (Dkt. No. 156; Br. at 19). As explained above, however, the record in this action and established law in this circuit do not support Apple's voluntary choice argument at this stage of the proceedings.

This order hereby **STAYS** both the *Frlekin* and *Kalin* actions pending the Supreme Court's ruling in *Busk*. Both sides, however, are expected to continue with discovery as to the California state-law claims alleged in all suits as those claims may survive even if the Supreme Court's ruling in *Busk* moots the FLSA and non-California state-law claims.

**CONCLUSION**

For the reasons stated above, Apple's motions for summary judgment in the *Frlekin* and *Kalin* actions as to all claims are **DENIED**.

The case management deadlines will be reset after the Supreme Court releases its decision in *Busk*. Accordingly, both sides shall please file a joint case management statement in both the *Frlekin* and *Kalin* actions within **SEVEN CALENDAR DAYS** after the *Busk* decision is released and advise how the parties propose this action should proceed.

**IT IS SO ORDERED.**

Dated: May 30, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE